## S03A0089. CITY OF BUFORD v. GEORGIA POWER COMPANY.

(581 SE2d 16)

FLETCHER, Chief Justice.

This appeal involves the constitutionality of the City of Buford's moratorium on the construction of electric power substations. The trial court held that the ordinance establishing the moratorium was preempted by state law and enjoined its enforcement. Because the City's ordinance conflicts with state law giving the Public Service Commission exclusive authority to regulate the business activity of Georgia Power, it is preempted by state law. Therefore, we affirm the trial court.

In 2002, the City of Buford enacted an ordinance that placed a one-year moratorium on the construction of electric power substations within 500 feet of residentially zoned property. When Georgia Power began construction on a substation, the Shoal Creek Switching Station, within 500 feet of residential property located in the City, the City issued a stop work order. Georgia Power sought an injunction against the ordinance's enforcement and a declaratory judgment that the ordinance was unconstitutional.

1. The Georgia Constitution provides that state statutes generally control over local ordinances: "no local or special law shall be enacted in any case for which provision has been made by an existing general law."[1] The legislature may preempt local enactments expressly, or preemption may be implied from the comprehensive nature of a state statute.[2]

OCGA § 36-35-6 (a) (5) provides for the express preemption of local ordinances "expanding the power of regulation over any business activity regulated by the Public Service Commission beyond that authorized by charter or general law or by the Constitution." The City contends that this express preemption provision does not apply because (1) its charter and OCGA § 36-34-2 (7) authorize the City to regulate the placement of substations under its police powers, and (2) the building of substations is not within the "business activity" of Georgia Power.[3]

2. The City's authority, found under its charter and OCGA § 36-34-2 (7), to exercise police powers with respect to public utilities is limited to a utility's use of City property. The City's charter permits it

---

[1] Ga. Const. 1983, Art. III, Sec. VI, Par. IV (a).

[2] *City of Atlanta v. S.W.A.N. Consulting & Sec. Services, Inc.*, 274 Ga. 277 (553 SE2d 594) (2001); *Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272, 276 (507 SE2d 460) (1998).

[3] Because a county's exercise of eminent domain power is not involved, the home rule provision of the Constitution, Ga. Const. 1983, Art. IX, Sec. II, Par. I (c), is not applicable in this case. Compare *Cobb County v. Georgia Transmission Corp.*, 276 Ga. 367 (578 SE2d 852) (2003); *Rabun County v. Georgia Transmission Corp.*, 276 Ga. 81 (575 SE2d 474) (2003).

to place conditions or restrictions upon the grant of franchises to public utilities; however, this authority is expressly confined to areas "in or under and over the streets, alleys, lanes, sidewalks, parks, and other property of the city."[4] Similarly, the legislature's vesting of power in municipalities to grant franchises and make contracts with utilities is limited to "the use and occupancy of the streets of the city."[5] Georgia Power is not using City property. It is constructing the substation on its own property. Neither the City charter nor OCGA § 36-34-2 (7) gives the City authority to regulate substations on private property.

3. The City contends that because the PSC does not have rules and regulations governing the placement of substations, the building of substations is not part of the business activity of Georgia Power, and is thus not within the express preemption of OCGA § 36-35-6 (a) (5). Because preemption is a matter of legislative intent,[6] it does not depend on whether the PSC has exercised the power it has been given; it depends on the legislature's intent in granting the power to regulate. "Where the State has established an agency of its own with plenary power to regulate utilities, it is universally recognized that municipalities cannot properly interpose their local restrictions unless and only to the extent any power to do so is expressly reserved to them by statute."[7] The legislature has broadly delegated authority to the PSC. The PSC

> shall have the general supervision of all . . . electric light and power companies;[8]
>
> may . . . require all companies under its supervision to establish and maintain such public services and facilities as may be reasonable and just;[9]
>
> shall have the authority to examine the affairs of all companies under its supervision . . . not only with respect to the adequacy, security, and accommodation afforded by their service . . . but also with reference to their compliance with all laws, orders of the commission, and charter requirements;[10]
>
> shall have the power and authority to allocate any utility service in such manner as it deems proper in order to protect

---

[4] City of Buford Charter, Ga. L. 1937-38, Ex. Sess., pp. 953, 1031.

[5] OCGA § 36-34-2 (7).

[6] *Fieldale Farms*, 270 Ga. at 273.

[7] *City of Doraville v. Southern Railway Co.*, 227 Ga. 504, 511 (181 SE2d 346) (1971).

[8] OCGA § 46-2-20 (a).

[9] OCGA § 46-2-20 (c).

[10] OCGA § 46-2-20 (e).

the public health, safety, or welfare.[11]

Because of the breadth and scope of the legislature's delegation of authority to the PSC, we conclude that the regulation of electric power substations by municipalities is preempted.
*Judgment affirmed. All the Justices concur.*

DECIDED MAY 19, 2003.

*Chandler & Britt, Walt M. Britt, Gregory D. Jay,* for appellant.
*Webb, Tanner & Powell, Anthony O. L. Powell, Troutman Sanders, Donald W. Janney,* for appellee.